## THE HOLLANDIA.

## ROYAL HOLLAND LLOYD v. CITY OF NEW YORK.

(District Court, S. D. New York. May 31, 1923.)

I. **Municipal corporations ⬅849—City held not responsible for breaking of mooring post on municipal pier.**

The city of New York *held* not responsible for the breaking by a moored steamship of a mooring post on a city pier, where the post was of cast iron, of the usual size and character of such posts in the harbor and without defect.

2. **Collision ⬅71(3)—Breaking away of a moored vessel held to raise presumption of negligence.**

A collision caused by the breaking loose of a moored vessel, by the breaking of a sufficient mooring post, and where the vessel's fasts were adequate in number and condition, in weather which was not extraordinary and in which no other similar accidents occurred, cannot be attributed to inevitable accident, but raises a presumption of fault on the part of the vessel.

In Admiralty. Suits for collision by Bird De Long, and by Mesick & Mesick, Inc., against the steamship Hollandia, the Royal Holland Lloyd, claimant, with the City of New York impleaded; and suit by the claimant against the City of New York. Decree for libelants against the Hollandia, and libel against the City dismissed.

Macklin, Brown & Van Wyck, of New York City (P. M. Brown, of New York City, of counsel), for libelants De Long and Mesick & Mesick, Inc.

Burlingham, Veeder, Masten & Fearey, of New York City (Chauncey I. Clark and Samuel C. Coleman, both of New York City, of counsel), for The Hollandia and Royal Holland Lloyd.

John P. O'Brien, Corp. Counsel, of New York City (Mr. Carroll, of counsel), for City of New York.

WARD, Circuit Judge. December 6, 1918, about 3:30 p. m., the steamer Hollandia, which had been lying bow in on the south side of the pier belonging to the city of New York at the foot of 134th street, North River, for some ten days to two weeks, broke loose, swung across the slip, and damaged the libelants' boats. They filed libels against the steamship, whose claimant, the Royal Holland Lloyd, impleaded the city of New York under the fifty-ninth rule in admiralty and also brought the third suit against it to recover damages sustained by the steamship. The three causes were tried together.

[1] The charge against the city in the Royal Holland Lloyd's petition to bring in the city and in its libel to recover its damages of the city is that the collision was caused by the breaking of an insufficient mooring post on the pier; whereas, its answer to the libels is that the accident was inevitable. These positions are not quite consistent, but the proof is clear that the post in question was of cast iron of the usual size and character of such posts in this harbor and that no fault whatever was discovered in the fracture. Therefore I find no liability on the part of the city.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[2] Between noon and 3:30 the wind had been from the northwest and the tide ebb, against both of which forces the Hollandia was more or less protected by three steamers lying on the other side of the pier. Certainly the weather was not causing any apprehension to the officers on board. The first officer says he looked at the lines from the deck of the steamer about five minutes before the accident and then went into his cabin. The second officer had looked at them in the morning. They say, as does the captain, that the wind was from 6 to 7 of the Beaufort Scale; that is, strong breeze 28 to 34 miles, and moderate gale 34 to 40 miles. The wind blew between 3 and 4 p. m., according to the Weather Bureau report from the top of the Whitehall building, at the rate of 55 miles an hour and at 3:49 for a period of five minutes at the rate of 64 miles. For the previous hours, the tide being stronger ebb, it had blown at a higher rate, viz., 58, 61, and 61 per hour, and between 2 and 3 p. m. for five minutes at the rate of 75 miles, and at 1:46 for one minute at the rate of 78 miles.

The Hollandia had an 8-inch manilla hawser and four 3¼-inch wire cables running from her bow to the pier, three of the latter being single, and the fourth, on the mooring post which broke, in two parts. There was a similar mooring at the stern.

The wind force at the time of the accident does not seem to me to have been extraordinary, and I think the steamer's fasts were adequate in number and strength, so that I am compelled to find that the accident was not inevitable. Being a moving vessel, there is a presumption of negligence against her which she must overcome.

The question arises: Why did the steamer break away then, although she held fast in worse weather earlier in the afternoon? Her officers say that the double wire cable pulled the mooring post over first, and then the other fasts gave way in succession; while the libelant De Long says the manilla line went first, after that the three wire cables, and last of all the double wire cable, which was slack and pulled over the mooring post. I think that is the real explanation of what occurred. The double part wire cable to the mooring post being slack, when the manilla line and the single wires parted, they gave a sudden surge to the double cable which probably caused it to raise on the mooring post and the leverage then was so great that a sudden strain pulled the post over. The double wire cable at the stern broke the steamer's bitts, but the strain there when the bow swung over must have been much greater than the strain on the forward mooring post, and we do not know anything about the character of the bitts.

A number of cases have been cited, but each depends upon its own circumstances. Without discussing them at length, I observe that vessels which without parting their own lines are injured by other vessels getting adrift belong to a different category. So also moored vessels, which get adrift without their own lines breaking because of a defective mooring post. So also storms in which many similar accidents occur. But here we have a vessel with fasts adequate in number and condition pulling over a sufficient mooring post in weather that was not extraordinary and which evidently did not disturb the officers in charge and in which no other similar accidents are reported.

The libelant De Long and the libelant Mesick & Mesick, Inc., may take the usual interlocutory decrees against the Royal Holland Lloyd, claimant; the petition against the city under the fifty-ninth rule will be dismissed with costs against the Royal Holland Lloyd; the libel of the Royal Holland Lloyd will be dismissed, with costs.